IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Devon W. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| the CITY OF ATLANTA, Georgia, | ) | |
| Bryant BURNS, Kelvin WALLS, | ) | |
| Alfred WATKINS, Gary SMITH, | ) | |
| Richard DILLON, Robbie | ) | |
| SCANDRICK, Gordon CABANAW, | ) | |
| Ritchie NEWELL, and Stanley | ) | |
| REYNOLDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

1.     This is an action for damages, declaratory relief, and injunctive relief,

brought pursuant to 42 U.S.C. § 1983 and state law, to remedy violations of the

Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments

to the United States Constitution and related rights under Georgia constitutional

and statutory law.

## Jurisdiction and Venue

2.     This court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution

of the United States; pursuant to 42 U.S.C. § 1983; pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367; and pursuant to 28 U.S.C. § 2201, as an actual controversy exists within this Court's jurisdiction.   This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202.

3.    Venue is proper pursuant to 28 U.S.C. § 1391, because at least one Defendant resides in this district and division, all Defendants reside in this State, and a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred within this district and division.

4.    The Honorable Chief Judge Tusan of the Fulton County Superior Court reversed the City of Atlanta municipal court's conviction of Plaintiff for violations of city ordinances on August 31, 2015, thereby providing Plaintiff with standing to bring suit for constitutional violations that led to the underlying conviction.

5.    Plaintiff provided the City of Atlanta with timely notice of his claims, in accordance with Georgia's ante litem notice statute, O.C.G.A. § 36-33-5, in order to bring his state law claims. The City of Atlanta acknowledged receipt of Plaintiff's ante litem notice by letter on or about September 24, 2015.  Over thirty days have passed from the presentation of such claim to the City of Atlanta and the City of Atlanta has not acted upon it, see O.C.G.A. § 36-33-5(b), (c).

## Parties

6.     Plaintiff Devon Brown ("Brown") is a resident of Georgia. Brown has been a Fulton County Sheriff's Deputy for 19 years. He is the president a motorcycle club, called the Dirty South Slab Riders Club, whose members are from a variety of professions, including law enforcement officers and members of the military, who enjoy riding and maintaining motorcycles.

7.     Defendant City of Atlanta (the "City") is a municipal governmental entity that is legally competent to sue and be sued. The City's policies, practices, and customs were the moving force behind the constitutional and statutory violations set out herein. The City maintains its Office at 55 Trinity Avenue, Atlanta, Georgia 30303 and may be served by personal service upon its Mayor or his designee.

8.     Defendant Bryant Burns was a Sergeant in the City of Atlanta Police Department at the time of this filing and at all times pertinent to this action. He may served with the summons and complaint at his place of employment, the City of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

9.     Defendant Kelvin Walls was a Sergeant in the City of Atlanta Police Department at the time of this filing and at all times pertinent to this action. He may served with the summons and complaint at his place of employment, the City

of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

10.    Defendant Alfred Watkins was an Officer in the City of Atlanta Police Department at the time of this filing and all times pertinent to this action. He may served with the summons and complaint at his place of employment, the City of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

11.    Defendant Gary Smith was an Investigator in the City of Atlanta Police Department at the time of this filing and all times pertinent to this action. He may served with the summons and complaint at his place of employment, the City of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

12.    Defendant Richard Dillon was an Officer in the City of Atlanta Police Department at the time of this filing and at all times pertinent to this action. He may served with the summons and complaint at his place of employment, the City of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

13.    Defendant Robbie D. Scandrick was a Detective for the City of Atlanta Police Department at the time of this filing and all times pertinent to this action. He may served with the summons and complaint at his place of

employment, the City of Atlanta Police Department Zone 3 precinct, which is located at 880 Cherokee Ave SE, Atlanta, GA 30315.

14. Defendant Gordon Cabanaw was Buildings Department Inspector for the City of Atlanta Buildings Department at the time of this filing and all times pertinent to this action. He may be served with the summons and complaint at his place of employment with the City of Atlanta at 55 Trinity Avenue, 3rd Floor - Suite 3800, Atlanta, Georgia 30303.

15. Defendant Ritchie Newell was a Senior Investigator for City of Atlanta Solicitor's Office at the time of this filing and all times pertinent to this action. He may be served with the summons and complaint at his place of employment, the solicitor's office, which is located at 150 Garnett St SW, Atlanta, GA 30303.

16. Defendant Stanley Reynolds was a Senior Investigator for the City of Atlanta Solicitor's Office at the time of this filing and all times pertinent to this action. He may be served with the summons and complaint at his place of employment, the solicitor's office, which is located at 150 Garnett St SW, Atlanta, GA 30303.

## **Facts**

### The City of Atlanta License and Permits Unit

17.    City of Atlanta issues business licenses for revenue.

18.    City of Atlanta has a special unit known as the "License and Permits Unit."

19.    The stated purpose of the "License and Permits Unit" is to inspect businesses for failures to comply with the licensing ordinances of the City of Atlanta, and to serve subpoenas, citations, and summonses for suspected violations of same.

20.    However, upon information and belief, the City maintained, at the time of the events giving rise to this case, an unlawful custom or policy of using the License and Permits Unit to conduct warrantless entries onto private property in order to conduct general criminal investigations that went far beyond the legal authority afforded to the unit to inspect compliance with the City's licensing ordinances.

21.    Said Unit was operating on February 8th, 2014.

22.    On February 8, 2014, at least nine (9) officers, inspectors, and investigators, were traveling to various properties in an attempt to conduct warrantless entries and searches of same in order to investigate possible criminal activity thereon, in conjunction with City policy. Said officers included Burns,

Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds were all present. (hereinafter referred to as the "officers").

The February 8, 2014 Arrest

23.    On February 8, 2014, Brown and the members of his motorcycle club were enjoying a private bachelor party at a property Brown had rented as a clubhouse for the group.

24.    The clubhouse was located at 2031 Metropolitan Parkway in Atlanta, Georgia.

25.    The clubhouse had prominent signs near the entrance that read "Private Club" and "No Trespassing."

26.    The clubhouse had blacked out windows that prevented passers by from seeing inside the club.

27.    The clubhouse was not open to the public.

28.    There was no business being conducted from the clubhouse.

29.    No food or alcohol was being sold, though club members and guests did bring their own food and beverages to enjoy and share.

30.    At approximately 4:30 a.m. on February 8, 2014, approximately nine City of Atlanta personnel arrived at Plaintiff Brown's private club, including Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds.

31.     Defendant Burns was the commanding officer that evening.

32.     Burns directed the other officers to enter into Plaintiff's clubhouse.

33.     The officers did not have a search warrant to enter Brown's clubhouse.

34.     No "exigent circumstances" were present that would have permitted a warrantless entry.

35.     According to testimony given to an Internal Affairs investigator by one or more of the officers who entered the clubhouse on that day, a member of the club held the door open to allow the officers to enter.

36.     However, surveillance footage shows that the officers entered on their own, and no member opened the door for them.

37.     According to testimony given to an Internal Affairs investigator by one or more of the officers who entered the club that day, the officers were there to perform a "compliance check."

38.     However, the entry and subsequence search went far beyond the reasonable or expected scope of the License and Permit Unit.

39.     A gentlemen was playing music for the guests to enjoy, and the officers commanded him to turn off the music.

40.     The officers immediately began to detain members and guests of the club, despite the fact that none of them were committing any crime.

41.    The officers demanded identification from members and guests of the club and began to run "background checks" on them.

42.    Officers demanded to know who was in charge of the clubhouse.

43.    Plaintiff stepped forward and indicated that he was the President of the club.

44.    Defendant Sergeant B. Burns, the lead officer, requested to see Plaintiff's business license.

45.    Plaintiff Brown stated that this was a private clubhouse and not a business.

46.    Plaintiff Brown told the officers that the club members were celebrating a private bachelor party.

47.    Plaintiff Brown told the officers to leave the clubhouse.

48.    Defendant Sgt. Burns and other officers then put Plaintiff Brown in handcuffs, causing him discomfort and distress.

49.    Defendant Sgt. Burns confiscated Plaintiff Brown's lawful firearm.

50.    The officers ignored Plaintiff's demands to leave the premises.

51.    The officers then performed a full-scale search of the premises, despite a total absence of probable cause for same.

52.     Though officers later claimed to smell marijuana and to see other evidence of marijuana use, this was merely a pretext to perform a search, as there was no marijuana being used at the club, where such activity is prohibited.

53.     No illegal contraband was found.

54.     Plaintiff Brown told the City of Atlanta law enforcement agents that he was an active deputy with the Fulton County Sheriff's Office.

55.     Defendant Sergeant K. Walls notified Fulton County Sheriff Department Internal Affairs about Plaintiff's arrest.

56.     Officers repeatedly accused Plaintiff of violating City of Atlanta ordinance § 30-55 for failure to obtain a business license and § 10-3 for failure to comply with commercial liquor license provisions.

57.      Plaintiff Brown was taken out of the clubhouse and formally arrested for violations of City of Atlanta Ordinances § 30-55, failure to obtain a business license and § 10-3, failure to comply with commercial liquor license provisions.

58.     The raid lasted approximately two to three hours.

59.     At some point during the raid, Defendant Snowden who was acting as Night Watch Commander, came on the scene and was briefed on what had occurred.

60.     Plaintiff Brown was transported to the Atlanta Detention Center until he was later released.

10

61.    Plaintiff's arrest was publicized widely on television, the internet, and other forums.

<u>February 14, 2014 Internal Affairs Complaint</u>

62.    On February 14, 2014, Plaintiff Brown filed a formal complaint against the City of Atlanta and City of Atlanta Police Department for the violation of his constitutional rights.

63.    In response to Plaintiff Brown's formal complaint, City of Atlanta opened an internal affairs investigation.

64.    Defendant Senior Investigator Ritchie Newell of the City of Atlanta Solicitor's Office stated in an email to Atlanta Internal Affairs on April 18th, 2014 that he "was advised to not give a statement" to Internal Affairs by his supervisor.

65.    During the internal affairs investigation Senior Investigator Reynolds also refused to give a statement under orders of his supervisors.

66.    The City's Internal Affairs department ultimately found no wrongdoing by the officers involved.

<u>May 2, 2014 Atlanta Municipal Court Order</u>

67.    On May 2nd, 2014, City of Atlanta Municipal Court Judge Crystal Gaines found Plaintiff Brown guilty of violating City Ordinances § 30-55 for failure to obtain business license and § 10-3 for failure to comply with liquor license requirements.

68.     Plaintiff Brown officially lost his job with the Fulton County Sheriff's Department in July of 2014 as a direct result of the search, seizure, and arrest that occurred on February 8, 2014.

### August 31, 2015 Fulton County Superior Court Order

69.     Plaintiff appealed his ordinance case to the Fulton County Superior Court.

70.     The Honorable Chief Judge Gail Tusan of Fulton County Superior Court held, as a matter of law, that Plaintiff's motorcycle club was neither a "Business" nor a "Bottle House" and, thus, not subject to Atlanta City Code § 30-55 and § 10-3.

71.     The Honorable Chief Judge Tusan also held that the Municipal Court erred when it refused to rule on Petitioner's motion to suppress illegally obtained evidence.

## **Legal Claims**

72.     By this reference, Plaintiff reincorporates the previously set forth factual allegations as if fully set forth herein.

### COUNT I—UNLAWFUL SEARCH AND SEIZURE—FEDERAL LAW

73.     As fully described herein in the proceeding paragraphs, Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds entered and searched Plaintiff Brown's private clubhouse, without a warrant,

exigency, or probable cause to do so, on February 8th, 2014, thereby depriving him of his rights under the Fourth Amendment to the United States Constitution.

74.     As fully described herein in the proceeding paragraphs, Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds unlawfully seized Plaintiff's property, including his private clubhouse and his lawful firearm, without a warrant, exigency, or probable cause to do so, on February 8th, 2014, thereby depriving him of his rights under the Fourth Amendment to the United States Constitution.

75.     As fully described herein in the proceeding paragraphs, Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds arrested Plaintiff Brown without a warrant, probable cause or exigent circumstances.

76.     At all times relevant to this action, the law was established with obvious clarity that conduct of Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds, as alleged more specifically hereinabove, violated the Fourth Amendment of the United States Constitution.

77.     The clearly established nature of the law is established by, among other factors, the fact that the ordinances for which Plaintiff was arrested explicitly did not permit arrest for suspected violations.

78.    Upon information and belief, the search and seizure of Plaintiff and his property was carried out pursuant to an unlawful custom or policy by the City of Atlanta.

79.    In order for warrantless searches of a private establishment to pass constitutional muster, said searches must be valid administrative searches of a closely regulated business, in which (1) there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made, (2) the warrantless inspections are necessary to further the regulatory scheme, and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. Bruce v. Beary, 498 F.3d 1232, 1247 (11th Cir. 2007).

80.    For such "administrative searches" to be valid in the absence of a warrant, they must be limited in time, place, and scope, in order to carry out the purpose for which they are permitted. Where the search itself is disproportionate to the valid need for administrative inspection and is a mere pretext to conduct general criminal investigations without a warrant, such act violates clearly established law. Id.

81.    In this case, the purported "administrative search" was conducted according to a program that, in terms of the certainty and regularity of its application, did not provide a constitutionally adequate substitute for a warrant.

82.    The Unit's "compliance checks" went far beyond that which was reasonably necessary to inspect for licensure. Rather than sending in a reasonable number of officers to ask the owner of the club for his business and liquor license, the City sent at least nine (9) officers onto Plaintiff's premises, detained everyone in the establishment, performed criminal background checks on everyone there, searched for drugs and evidence of other crimes, seized Plaintiff's lawful firearm, forced everyone to leave, and arrested the Plaintiff. Such actions went far beyond what is reasonable or necessary to inspect establishments for compliance with local ordinances.

83.    Upon information and belief, this was not merely an isolated incident. These actions were carried out pursuant to a custom, policy, or practice that violates the Fourth Amendment to the U.S. Constitution. Evidence that this action was carried out pursuant to an unlawful City-wide policy shall include the fact that this same task force routinely conducts these sorts of pretextual "compliance checks" in private clubs throughout metro Atlanta, with the full knowledge and authorization of policymaking officials within the City of Atlanta.

84.    This unlawful policy or practice was the moving force behind Plaintiff's injury.

85.    Plaintiff suffered significant damages, including financial loss and emotional distress, as a result of these actions.

<u>COUNT II—UNLAWFUL SEARCH AND SEIZURE—STATE LAW</u>

86.    The unlawful entry and search of Plaintiff's property, and his unlawful arrest, also violated Plaintiff's rights under Article 1 § 1 ¶ 13 of the Georgia Constitution.

87.    Said actions also constitute the torts of false arrest and battery under Georgia law.

88.    The actions of Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds, as described herein, were willful, deliberate, and malicious, thereby depriving them of state law immunity and entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

89.    The individual Defendants are liable under state law, including but not limited to O.C.G.A. 33-36-4.

<u>COUNT III—VIOLATION OF RIGHT TO PEACEABLY ASSEMBLE</u>

90.    As fully described herein in the proceeding paragraphs, the Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds violated the First Amendment of the United States Constitution by illegally arresting Plaintiff Brown for peacefully assembling at a private clubhouse to celebrate a private bachelor party.

91.   Under the facts and circumstances alleged herein, an objectively reasonable public official in Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds' position would have known that searching and seizing Plaintiff's private clubhouse, disrupting and disbanding his peaceable private gathering, and arresting Plaintiff for peacefully gathering on his private property, was a violation of the First Amendment to the United States Constitution.

92.   At all times relevant to this action, the law was established with obvious clarity that the conduct of the Defendants as alleged more specifically herein above was a violation First Amendment of the United States Constitution.

93.   As a direct and proximate cause of Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds unlawful actions, Plaintiff Brown was illegally arrested and detained against his will thereby suffering a loss of liberty in violation of his rights and a suppression of his rights to free speech and being able to peacefully gather with friends without fear or harassment, violating the First Amendment of the United States Constitution, entitling him to actual and compensatory damages in an amount to be determined by the enlightened conscience of the jury.

94.   The actions of Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds, described herein were willful,

deliberate, and malicious, thereby entitling Plaintiff Brown to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

95.    In addition to violating federal law, these actions also violated Article 1 § 1 ¶ 9 of the Georgia Constitution, which guarantees free speech and freedom of assembly.

## COUNT IV—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.    Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds' acts of misrepresenting evidence to authorities, arresting Plaintiff Brown without probable cause, harassment, and urging the prosecution of Plaintiff, as described supra, were intentional and/or reckless.

97.    Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds conduct was extreme and outrageous.

98.    Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds' conduct caused Plaintiff to suffer severe emotional distress, entitling him to compensatory damages in an amount to be determined by the enlightened conscience of the jury.

99.    The actions of Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds described herein were willful, deliberate, and malicious, thereby entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiff prays:

a) That the Court declare that Defendants' actions, policies, and practices complained of herein violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

b) That the City of Atlanta be permanently enjoined from violating the rights of Plaintiff and others pursuant to its unlawful policy;

c) That special damages be awarded to compensate Plaintiff for his economic injuries as a consequence of Defendants City of Atlanta, Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds' violations of Plaintiff Brown's rights in an amount to be determined by the enlightened conscience of the jury;

d) That compensatory damages be awarded against Defendants City of Atlanta, Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds to compensate Plaintiff Brown for his pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, and loss of professional and personal reputation as a consequence of Defendants' actions in an amount to be determined by the enlightened conscience of the jury;

e) To delete, expunge, and seal any arrest records that may have been created pursuant to Plaintiff Brown arrest on February 8th, 2014;

f) That punitive damages be awarded against Defendants Burns, Walls, Watkins, Smith, Dillon, Scandrick, Cabanaw, Newell, and Reynolds in an amount to be determined by the enlightened conscience of the jury to deter Defendants and others from similar misconduct in the future;

g) That a trial by jury be had on all issues wherein a jury trial is permitted under law;

h) That attorneys' fees and expenses of litigation be awarded as authorized under 42 U.S.C. § 1988 and other provisions of law;

i) That pre-judgment and post-judgment interest be awarded; and

j) That the Court award such other equitable or monetary relief as deemed just and proper.

A JURY TRIAL IS REQUESTED.

Respectfully submitted, this January 4, 2016.

/s/ Joshua Landon Brownlee
Joshua Landon Brownlee
Georgia Bar No. 611140
125 East Trinity Place, Suite 312
Decatur, Georgia 30030
(404) 844-6139
jbrownleelaw@gmail.com

/s/ James Radford
James Radford
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com


ATTORNEYS FOR PLAINTIFF