IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **DEVON W. BROWN** | ) | |
|     **Plaintiff** | ) | |
| | ) | |
|  **v.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **CITY OF ATLANTA, Georgia,** | ) | **CIVIL ACTION FILE** |
| **BRYANT BURNS, KELVIN WALLS,** | ) | **NO. 1:16-CV-00008-CAP** |
| **ALFRED WATKINS, GARY SMITH,** | ) | |
| **RICHARD DILLON,** | ) | |
| **ROBBIE SCANDRICK,** | ) | |
| **GORDON CABANAW,** | ) | |
| **RITCHIE NEWELL, and** | ) | |
| **STANLEY REYNOLDS** | ) | |
| | ) | |
|     **Defendants** | ) | |
| _____ | ) | |

## CITY DEFENDANTS' MOTION TO DISMISS

## PLAINTIFF'S AMENDED COMPLAINT

COME NOW, Defendants City of Atlanta, Bryant Burns, Kelvin Walls,

Alfred Watkins, Gary Smith, Richard Dillon, Robbie Scandrick, Gordon

Cabanaw[1], Ritchie Newell, and Stanley Reynolds; in their individual and official

capacities (hereinafter "City Defendants"), and file their Motion to Dismiss

Plaintiff's Amended Complaint in the above-referenced matter.

_____

[1]Gordon Cabanaw is Deceased

# I.   STATEMENT OF THE CASE

Devon W. Brown ("Plaintiff") filed the original suit in this court on January 4, 2016, alleging against the City Defendants (1) unconstitutional search and seizure; (2) Violation of Right to Peaceably Assemble; and (3) various state law claims. Plaintiff amended the complaint on March 2, 2016.   Plaintiff seeks compensatory damages in an unspecified amount, punitive damages and attorney's fees.

# II.   STATEMENT OF FACTS

Plaintiff's case references an incident that occurred on February 8, 2014.[2] According to Plaintiff, at approximately 4:30am, Plaintiff and his motorcycle club members were engaged in a bachelor party at a commercial building located at 2031 Metropolitan Parkway in Atlanta, Georgia.[3]  This location was a long term rental by Plaintiff as a clubhouse for the motorcycle club.[4]  There was a sign near the entrance that read "Private Club".[5]  The windows were blacked out so that no one could see in them.[6]

---

[2] Complaint, ¶ 21,23

[3] Complaint, ¶ 30

[4] Complaint, ¶ 23

[5] Complaint, ¶ 25

[6] Complaint, ¶ 26

The City defendants were out doing license compliance checks.[7]   They entered the facility through the unlocked front door that was held open by a person that was leaving the facility.[8]   The City Defendants asked for the person in charge.[9] Plaintiff presented himself as the "President of the Club".[10]   The City Defendants requested to see Plaintiff's business license.[11]   The Plaintiff stated that he did not need a license because he was a private club.[12]   Plaintiff was arrested for violation of City Code 30-55, *Failure to Obtain a Business License* and City Code 10-3 *Failure to Comply with Commercial Liquor License Provisions*.[13]   No one else was arrested.

## I.    ARGUMENT AND CITATION TO AUTHORITY

### A. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[14]   Dismissal is also proper if the

---

[7] Complaint, ¶ 19, 37

[8] Complaint, ¶ 35

[9] Complaint, ¶ 42

[10] Complaint, ¶ 43

[11] Complaint, ¶ 44

[12] Complaint, ¶ 45

[13] Complaint, ¶ 56, 57

[14] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)

allegations indicate the existence of an affirmative defense or other bar to relief. [15] "[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations reveal the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."[16]

## B. PLAINTIFF'S CLAIMS AGAINST THE CITY MUST BE DISMISSED.

### 1. Plaintiff's Section 1983 Claim Fails As a Matter of Law.

Plaintiff seeks to hold the City of Atlanta liable for the actions of the officers.   First, in *City of Los Angeles v. Heller*, the United States Supreme Court made clear that if there is no constitutional violation, there can be no liability on the part of the individual officer or the governmental body.[17]   Second, in this circuit, the courts have held that in a Section 1983 case against a municipality, the court must find a violation of a constitutional right prior to finding municipal liability.[18]

---

[15] *Quiller v. Barclays American/Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984), *adhered to en banc*, 764 F.2d 1400 (11th Cir. 1985).
[16] *Id.*
[17] *City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *see also Vinyard v. County of Murray*, 990 F .2d 1207, 1211 (11th Cir. 1993).
[18] *Wyke v. Polk County School Board*, 129 F.3d 560, 568-69 (11th Cir. 1997); *Rooney v. Wilson*, 101 F.3d 1378, 1381 (11th Cir. 1996); *Skinner v. City of Miami*, 62 F.3d 344, 348 (11th Cir. 1995).

However, even assuming the officers violated Plaintiff's constitutional rights, a municipal government may only be held liable under 42 U.S.C. Section 1983 where an official policy or custom causes the alleged constitutional injury.[19] Although Plaintiff avers that there was a governmental policy or custom that was the basis of the alleged acts in his Complaint in his desperate attempt to bring suit against the City, Plaintiff fails to identify any policy that remotely supports his claim.  Specifically, the law is well settled that municipalities may only be found liable under *Section 1983* where the municipality itself causes the constitutional violation at issue.[20] *Respondeat superior* and vicarious liability do not attach under *Section 1983*.[21] A municipality may not be sued under *§ 1983* solely on the basis of the wrongful acts of its employees or agents.[22] Municipal entities cannot be held liable simply for employing an alleged tortfeasor.[23]  Instead, liability can only be imposed for injuries inflicted pursuant to an official "policy or custom" of the municipality.[24]

---

[19] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

[20] *City of Canton, Oh. v. Harris,* 489 U.S. 378, 385 (1989).

[21] *Id; See also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-33,(1989).

[22] *Monell v. Department of Social Services, 436 U. S. 685, 694-5 (1978).*

[23] *Board of County Commissioners of Bryan County, Okla. V. Brown, 520 U.S. 397 (1997).*

[24] *Monell, 436 U.S. at 694.*

Plaintiff must identify and produce evidence of (1) the existence of some policy, custom, or practice; (2) which is attributable to the municipality; (3) that was the moving force behind, and (4) a constitutional injury.[25]  Proof of a **single** incident of unconstitutional activity is not sufficient to impose liability" against a **municipality.** [26] "A **single** incident would not be so pervasive as to be a **custom**,"[27] because a **custom** must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."[28]  This requirement of proof "prevents the imposition of liability based upon an isolated incident,"[29] and "'ensures that a **municipality** is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the **municipality**,'" [30]"In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff must show that the policy itself is unconstitutional."[31]

---

[25] *City of Oklahoma City v. Tuttle*, 471 U.S. 823-24 (1985); Parker v. Williams, 862 F.2d 1471, 1477-78 (11th Cir. 1989).

[26] *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

[27] *Grech v. Clayton County*, 335 F.3d  1326, 1330 n.6 (11th Cir. 2003).

[28] *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)

[29] *McDowell v. Brown* 392 F.3d 1283, 1290 (11th Cir. 2004).

[30] *Id.* (*quoting Bd. of Cnty. Comm'rs v Brown*, 520 U.S. 397, 403-04 (1997).

[31] *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000).

In the instant case, Plaintiff cannot and does not identify any City of Atlanta policy or practice that was the driving force behind the allegedly unconstitutional acts occurring on February 8, 2014. Plaintiff merely insinuates "upon information and belief", that there is some policy or practice that must be the driving force and it is with full knowledge of the policy makers. Plaintiff fails to identify the policy maker and fails to identify a policy. Further, Plaintiff fails to identify any other instance of an alleged violation that would amount to a practice or custom. Instead, Plaintiff cites the duties and responsibilities of the compliance unit to "inspect businesses for failures to comply with the licensing ordinances…" but then states that these duties are somehow a ruse to get into to businesses without a warrant. Clearly there is no policy or custom in these allegations and Plaintiff has provided no facts or evidence to suggest that a final policy maker was involved in such allegations. Therefore, Plaintiff's claims against the City of Atlanta must be dismissed.

### 2. The City Of Atlanta Is Entitled To Sovereign Immunity Against Plaintiff's State Law Claims

Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. O.C.G.A. §

36-33-1.  Sovereign immunity is a threshold issue and Plaintiffs bear the burden of establishing that the City of Atlanta's alleged conduct is excepted from sovereign immunity.[32]  Without a waiver of sovereign immunity, a municipal corporation cannot be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law.[33]

Thus, governmental immunity precludes this lawsuit against the City of Atlanta, unless the City waived its immunity by purchasing liability insurance. The City of Atlanta has not purchased liability insurance.[34]  Thus, Plaintiff's state law claims are barred by the doctrine of sovereign immunity and should be dismissed. Furthermore, the City of Atlanta cannot be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law.[35] Therefore, even if the officer committed a tort under Georgia law, the City of Atlanta is not liable to Plaintiff.  Accordingly, all such claims must be dismissed.

---

[32] *Dept. of Transp. v. Cox,* 246 Ga. App. 221, 222 (2000); *Reidling v. City of Gainesville,* 280 Ga. App.  698, 701 (2006);  *Scott v. City of Valdosta*, 280 Ga. App. 481, 484 (2006).

[33] *Scott,* 280 Ga. App. at 485; O.C.G.A. § 36-33-3.

[34] *Reese v. City of Atlanta*, 261 Ga. App. 761, 762 (2003) (stating same and affirming the trial court's grant of summary judgment in favor of the city).

[35] O.C.G.A. § 36-33-3; *McDay v. City of Atlanta,* 204 Ga. App. 621, 622(3), 420 S.E.2d 75 (1992).

## C. <u>CITY DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY ARE ENTITLED TO QUALIFIED IMMUNITY.</u>

City Defendants, sued in their individual capacities, are entitled to qualified immunity and thus should be dismissed from the instant suit as a matter of law. The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.[36] The doctrine protects not only against liability, but the need for government officials to even defend against baseless lawsuits.[37] "Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities."[38] Qualified immunity is a question of law for the court.[39] "Because this defense should be resolved at the earliest possible stage of litigation, it is proper for the district court to rule on qualified immunity during a motion to dismiss."[40]

Public officials are shielded under qualified immunity so far as "their conduct does not violate clearly established statutory or constitutional rights of

---

[36] *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("We must also keep in mind the fact that '[w]e generally accord . . . official conduct a presumption of legitimacy'.").

[37] *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).

[38] *Redd v. Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citing *Lassiter v. Alabama A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

[39] *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

[40] *Gonzalez v. Reno*, 325 F3d 1228, 1233 (11th Cir. 2003).

which a reasonable person would have known."[41]  The qualified immunity analysis consists of a preliminary inquiry plus two steps.  As a preliminary matter, the defendant official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  Once that inquiry is satisfied, the burden shifts to Plaintiffs, whose allegations, if true, must establish a constitutional violation.[42]  Plaintiffs must do more than refer to general rules and abstract rights to meet his burden.[43]  "Qualified immunity focuses on the actual, specific details of concrete cases."[44]  Only if Plaintiffs' rights were violated does the court then proceed to the final step in the qualified immunity determination—whether that right was clearly established.[45]

### 1.   City Defendants Acted In Their Discretionary Capacity.

To be eligible for qualified immunity, a government official "must have been engaged in a 'discretionary function' when he performed the acts of which the Plaintiffs complain."[46]  The inquiry is two-fold.  The court asks "whether the government employee was (a) performing a legitimate job-related function (that is,

---

[41]   *Harlow*, 457 U.S. at 812.

[42]   *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th  Cir. 1995).

[43]   *Dorsey v. Wallace*, 134 F.Supp.2d 1364, 1371 (N.D.Ga. 2000, Pannell, J.) (citing *Jones v. Cannon*,  174 F.3d 1271, 1282-83 (11th Cir. 1999)).

[44]   *Jones*, 174 F.3d at 1283 (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987)).

[45]   *Wood*, 323 F.3d at 877-78; *Hartsfield*, 50 F.3d at 953.

[46] *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (quoting *Harlow*, 457 U.S. at 818).

pursuing a job-related goal), (b) through means that were within his power to utilize."[47]

The allegations of the Plaintiff relative to the conduct engaged in by the officers make clear that all of the Defendant officers were plainly acting in a discretionary capacity when they were alleged to have acted on February 8, 2014. Therefore, the City Defendant officers are entitled to qualified immunity.

## 2.   City Defendants Did Not Violate Plaintiffs' Constitutional Rights.

Having established that the City Defendants would have been acting in their discretionary capacity, the burden shifts to Plaintiff to prove that the Defendants violated his constitutional rights.

### a.   There was no Unconstitutional Search and Seizure

Plaintiff's Complaint fails to satisfy this burden in that he contends that he and his premises were searched in violation of the Fourth Amendment.  On the contrary, if an officer has probable cause to believe that an individual has committed even a very minor criminal offense, the officer may arrest the offender without violating the Fourth Amendment.[48]  In fact, to receive qualified immunity

---

[47] *Id.* at 1265-66.
[48] *Lee*, 284 F.3d at 1194-95 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)).

protection, an officer only needs arguable probable cause.[49]  Arguable probable

cause exists if an officer could have reasonably believed that probable cause

existed in light of the information the officer possessed.[50]  It is not enough that the

plaintiff produce evidence that would allow a fact finder to find that the officer was

in reality wrong about the facts.  The plaintiff must produce evidence that would

allow a fact finder to conclude that no reasonable person in the defendant's

position could have thought the facts were such that they justified defendant's

acts.[51]

Probable cause to arrest exists if, at the moment an arrest is made, the facts

and circumstances within the arresting officers' knowledge, and of which he has

reasonably trustworthy information, are sufficient to warrant a prudent man in

believing that the suspect has committed or is committing an offense.[52]  The

standard for probable cause requires that an arrest be objectively reasonable under

the totality of the circumstances.[53]  In *Saucier,* the Supreme Court noted that

---

[49] *Holmes*, 321 F.3d at 1079 (citing *Montoute v. Carr*, 114 F.3d 181, 184 (11th
Cir. 1997)).

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (quoting *Ferraro* 284
F.3d at 1195 (11th Cir. 2002)).

officers can have reasonable, but mistaken beliefs, as to the facts establishing the existence of probable cause or exigent circumstances.[54]

City Defendants had ample probable cause to arrest Plaintiff. The Plaintiff openly admits to renting a commercial property where patrons were actively consuming alcohol and food at 4:30am without **any** valid licenses.[55]   Plaintiff erroneously relies on Chief Judge Tusan's ruling to believe that his motorcycle club requires no licensure at all because he is not conducting business. This belief is flawed. Judge Tusan's ruling was based on a failure of the municipal court to respond to the Court's Order. She specifically stated,

> **"Respondents having been represented by Counsel at this Court's April 14, 2015 hearing and having failed to abide by the Court's instructions, the Court grants relief to Petitioner through its authority under OCGA 15-1-3 to compel obedience to its Orders.   For the reasons more fully set forth below, this Court finds that the factual findings of the lower court were contrary to law, unsupported by the evidence, and are reversed as a matter of law…"[56]**

This ruling is a procedural ruling based on a failure of the Municipal Court to obey an order. It is not based on the merits of the Plaintiff's argument.

Plaintiff's motorcycle club is an entity that requires a license. Plaintiff's motorcycle club has members that pay dues. The Municipal code defines a

---

[54] *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

[55] Complaint ¶ 29, 32

[56] This Court may take judicial notice of Judge Tusan's Order 2014-CV-252456 (Aug. 31, 2015)

business requiring a license as "Business shall maintain its ordinary and customary usage according to context but also may be used to generally identify a person or entity carrying on a trade, occupation, profession, or other commercial or **non-commercial enterprise**. Business tax means the same as occupation tax."[57]

Plaintiff further erroneously argues that his motorcycle club is a social/private club[58] and does not require any licensing.  Municode Section 10-1 defines Private Club as the following:

**"Private club means a corporation chartered, organized and existing under the laws of the state, exempt from federal income taxes pursuant to section 501(c) of the Internal Revenue Code, as amended, actively and continuously in operation within the city as a nonprofit corporation for at least one year immediately prior to the application for a license under this chapter and during which time such corporation shall have had continuously not less than 250 members whose names, current addresses and current telephone numbers shall be kept listed on the club premises and made available for inspection on the premises by the Atlanta Police Department during all hours during which the private club is open for business, which members shall have regularly paid monthly, quarterly, semiannual or annual dues. In no event shall dues be paid on a daily basis."**

Plaintiff's club fails to meet this description.  Assuming arguendo that it does, the code clearly states that The Atlanta Police Department has the right to enter and inspect during the hours that the premises is open.  Further, assuming arguendo that the Plaintiff's establishment does qualify as a "Private Club"; the

---

[57] Municode Sec. 30-51

[58] Complaint 25, 48

private club would be governed by the Alcoholic Beverages Code. The relevant section states:

**"(b)**

> **It shall be a violation of this chapter for any premises, that performs or undertakes any type of operation or activity for which a occupation tax certificate issued pursuant to Chapter 30 to provide alcoholic beverages to persons on the premises unless a license issued under this chapter allowing on premises consumption of alcoholic beverages has first been obtained. This prohibition shall apply without regard to whether the alcoholic beverages are provided free of charge as a part of any promotion by the owner of the premises or operator of the business, given as prizes in connection with any type of contests or raffles, given as bonuses or inducements offered in connection with the purchases of goods and/or services. "[59]**

The code goes on to state that any person employed by the business and present at the time may be charged with the offense.

**"(c)**

> **Any person employed by the business and who is present at the time when alcoholic beverages are being provided by a non-licensed premises or location may be charged with this offense."**

Plaintiff held himself out to be the president of the "private club";[60] therefore, Plaintiff's arrest was valid.   Plaintiff's allegation that the code language does not allow for arrests is also flawed.   Plaintiff quotes language regarding compliance investigators' inability to make arrests.   While that may be true, the

---

[59] Section 10-3

[60] Complaint ¶ 46

language speaks of the authority and empowerment of "compliance investigators" rather than the punishments for violations of the code. Plaintiff's arrest was done by actual Atlanta Police Officers. City Defendants had both probable cause and reasonable suspicion to arrest Plaintiff. As such, no constitutional violation occurred.

**b.     There was no First Amendment Violation**

The first Amendment Right to Peaceably Assemble does not include the right to illegally serve alcohol and party at a bachelor party in an unlicensed commercial property at 4:30 am. A Bachelor party is not constitutionally protected conduct. Further, a bachelor party in an unlicensed facility is certainly not lawful. Government officials may not impose restrictions on protests or parades or other **lawful** assemblies in order to censor a particular viewpoint or because they dislike the content of the message. However, they may impose some limitations on assembly rights by enacting reasonable "time, place and manner" restrictions designed to further legitimate regulatory objectives, such as requiring permits, licenses and closing times.[61] Plaintiff did not have the proper licensing for the rental property. There is no First Amendment violation.

---

[61] *Forsyth County v. The Nationalist Movement*, 505 U.S. 123 (1992)

### D. **PLAINTIFF'S STATE CLAIMS AGAINST CITY DEFENDANTS MUST BE DISMISSED.**

Plaintiff's state law claims must fail as a matter of law as City Defendant Officers are entitled to official immunity. The doctrine of official immunity offers public officers and employees who are engaged in discretionary acts limited protection from suit in their personal capacity.[62]   In, Georgia, official immunity turns on the type of function the official is engaged in—whether it is a ministerial or a discretionary act. A ministerial act is one that is simple, absolute, and definite arising under conditions admitted or proved to exist and requiring merely the execution of a specific duty.[63] By contrast, a discretionary act calls for the exercise of personal judgment including examining the facts, reaching reasoned conclusions, and acting on them in a way that is not specifically directed.[64]

**Under Georgia law, an officer:**

> *may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[65]*

---

[62] *Cameron v. Lang*, 274 Ga. 122, 123 (2001).

[63] *Carter v. Glenn*, 249 Ga. App. 414 (2001).

[64] *Id.* at 416.

[65] O.C.G.A. §36-33-4 (emphasis added).

An official function is "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."[66]   Therefore, while an officer may be personally liable if he acts with negligence, actual malice, or intent to injure in the performance of a ministerial duty, an officer may only be liable for the performance of a discretionary function if he acts with malice or intent to injure.[67]   Actual malice denotes "express malice or malice in fact."[68]   In *Merrow v. Hawkins*, the Georgia Supreme Court distinguished between "malice" and "actual malice," concluding that the requirement that a plaintiff show actual malice "exclude[s] any liability for injuries and damages if officers and employees act with implied malice in the performance of their official functions."[69]

In that Plaintiff has brought state law claims against the Defendant Officers, they were still performing discretionary functions.  Plainly, the officers, if engaged in the alleged conduct, were making a choice or reasoned decision in deciding on a course of conduct (i.e., how to proceed with the arrest of Plaintiff).  Thus, they

---

[66] *Gilbert v. Richardson*, 264 Ga. 744, 753 (1994).

[67] *Cameron*, at 123.

[68] *Merrow v. Hawkins*, 266 Ga. 390, 392 (1996).

[69] *Id.* Although the Court was reviewing liability of state officers and employees under the 1991 Amendment to Art. I, Sec. II, Par. IX, of the Constitution of the State of Georgia, the language limiting a state officer or employees liability who are performance of their official duties to instances in which they act with "actual malice" or with an actual intent to cause injury is similar to O.C.G.A. §36-33-4 .

would be using discretion in carrying out their duties relative to Plaintiffs. Therefore, Plaintiffs must show that the officers acted with actual malice.

Plaintiff has failed to present any evidence of actual malice against City Defendants.  These allegations in the complaint do not rise to the level of actual malice.  Indeed, Plaintiff must provide evidence that Defendants deliberately intended to harm Plaintiff and the only evidence presented is that they merely intended to perform their jobs.  Actual malice requires a deliberate intention to do wrong in context of official immunity and excludes any liability for injuries and damages if officers and employees act with implied malice or reckless regard in performance of their official functions.

City Defendants had arguable probable cause to arrest Plaintiff and they performed these duties with no malice, actual or otherwise.  Consequently, City Defendants are entitled to official immunity against Plaintiff's state law claims.

**E. <u>PLAINTIFF'S PUNITIVE DAMAGE CLAIM MUST BE DISMISSED.</u>**

Further, just as there is no evidence to support actual malice, there is no evidence in the record to support a granting of punitive damages.   Nothing in the record even suggests that City Defendants actions were accompanied with fraud, ill will, recklessness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the purported injury.   As such, Plaintiff's

punitive damage claim is entirely without merit and must be dismissed. Further, punitive damages are not recoverable against a municipality.[70]   Government entities are specifically "exempt from punitive damages under Title VII."[71] Accordingly, this court should dismiss Plaintiff's request for punitive damages against City Defendants and City of Atlanta as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint against the City Defendants should be dismissed in its entirety.

## CERTIFICATION

Counsel for City Defendants certifies that this brief has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully submitted this 15th day of March, 2016.

/s/*LaShawn W. Terry*
Robert N. Godfrey
Chief Counsel
Georgia Bar No. 298550
LaShawn W. Terry
Sr. Assistant City Attorney
Georgia Bar No. 702578

---

[70] *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1309 n. 5 (11th Cir. 1988).

[71] *Scott v. Estes*, 60 F.Supp.2d 1260, 1274 (M.D.Ala. 1999); 42 U.S.C. § 1981 (b)(1).

Attorneys for City Defendants


City of Atlanta Law Department
Suite 5000
55 Trinity Avenue
Atlanta, GA 30303
(404) 546-4178(telephone)
(404) 546-9535 (facsimile)
lterry@atlantaga.gov

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEVON W. BROWN** | ) | |
|    **Plaintiff** | ) | |
| | ) | |
|  **v.** | ) | |
| | ) | |
| | ) | |
| **CITY OF ATLANTA, Georgia,** | ) | **CIVIL ACTION FILE** |
| **BRYANT BURNS, KELVIN WALLS,** | ) | **NO. 1:16-CV-00008-CAP** |
| **ALFRED WATKINS, GARY SMITH,** | ) | |
| **RICHARD DILLON,** | ) | |
| **ROBBIE SCANDRICK,** | ) | |
| **GORDON CABANAW,** | ) | |
| **RITCHIE NEWELL, and** | ) | |
| **STANLEY REYNOLDS** | ) | |
| | ) | |
|   **Defendants** | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **CITY DEFENDANTS'**

**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** with the Clerk

of Court using the CM/ECF system which will automatically send e-mail

notification to the attorney of record.

                        BY:   /s/ _LaShawn W. Terry_
                              **LASHAWN W. TERRY**
                              Sr. Assistant City Attorney
                              Georgia Bar No. 702578

                              Attorney for City Defendants

City of Atlanta Law Department
Suite 5000
55 Trinity Avenue
Atlanta, GA 30303
(404) 546-4178(telephone)
(404) 546-9535 (facsimile)
lterry@atlantaga.gov