UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVON W. BROWN,

        Plaintiff,

        v.

CITY OF ATLANTA, GEORGIA,
BRYANT BURNS, KELVIN WALLS,
ALFRED WATKINS, GARY SMITH,
RICHARD DILLON, ROBBIE
SCANDRICK, GORDON CABANAW,
RITCHIE NEWELL, AND STANLEY
REYNOLDS,

        Defendants.

CIVIL ACTION NO.

1:16-CV-008-CAP

## O R D E R

This matter is before the court on Bryant Burns, Kelvin Walls, Alfred Watkins, Gary Smith, Richard Dillon, Robbie Scandrick, Gordon Cabanaw, Ritchie Newell, Stanley Reynolds, and the City of Atlanta's (the "defendants") motion to dismiss [Doc. No. 10]. The motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. Factual Background

The plaintiff, Devon Brown, rented a commercial property as a clubhouse for his motorcycle club. The clubhouse had blacked out windows and signage at the entrance that said "Private Club" and "No Trespassing."

Amend. Compl. ¶ 25 [Doc. No. 7].  Brown used the club for social gatherings and no business was being conducted in the clubhouse.  The club held a private bachelor party for one of its members on February 8, 2014.  "No food or alcohol was being sold, though club members and guests could bring their own food and beverages to enjoy and share."  Amend. Compl. ¶ 29 [Doc. No. 7].

In the early morning hours of February 8, 2014 (at around 4:30 a.m.), the nine City of Atlanta individual defendant police officers entered Brown's clubhouse.  "[S]urveillance footage shows that the officers entered on their own, and no member opened the door for them."  Amend. Compl. ¶ 38 [Doc. No. 7].  The officers did not have a search warrant to enter the clubhouse. The officers claimed they were there for a "compliance check," but Brown alleges that the "search went far beyond the reasonable or expected scope of the License and Permit Unit."  Amend. Compl. ¶ 41 [Doc. No. 7].

The officers detained members of the club, demanded identification, and ran background checks on them, "despite the fact that none of them were committing any crime."  Amend. Compl. ¶ 43 [Doc. No. 7].  Brown informed the defendants that he did not have a business license because the property was a private club, and the defendants refused to leave the clubhouse after Brown asked them to.  The defendants placed Brown in handcuffs, causing

pain and distress, and conducted a search of the premises.  The defendants claimed to have probable cause after smelling marijuana, but no illegal contraband was found.  "Brown was taken out of the clubhouse and formally arrested for violations of City of Atlanta Ordinances § 30-55, failure to obtain a business license and § 10-3, failure to comply with commercial liquor license provisions."  Amend. Compl. ¶ 60 [Doc. No. 7].  "Chief Judge Gail Tusan of Fulton County Superior Court held, as a matter of law, that Plaintiff's motorcycle club was neither a "Business" nor a "Bottle House" and, thus, not subject to Atlanta City Code § 30-55 and § 10-3."  Amend. Compl. ¶ 75 [Doc. No. 7].

## II.  Motion to Dismiss Standard

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Analysis

### A. Claims Against the City of Atlanta

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy[1] or custom,[2] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  The plaintiff must show that the "policy or custom of the city 'subjected' him, or

---

[1] A "policy" is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).

[2] A "custom" is an "unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law."  *Id.*

'caused him to be subjected' to the deprivation of constitutional rights." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985). "Random acts or isolated incidents" are usually insufficient to demonstrate a custom or policy; the plaintiff must instead show a "persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). The plaintiff must also allege sufficient facts indicating that the municipality had "actual or constructive knowledge of the acts complained of." *Fountain v. City of Lakeland*, No. 8:11-CV-52-T-17-TBM, 2011 3703454, at *5 (M.D. Fla. Aug. 23, 2011).

First, Brown has sufficiently alleged that his constitutional rights were violated. Brown maintains that the officers entered the clubhouse uninvited, without probable cause or a warrant, and arrested Brown. According to the complaint, the harm suffered by Brown came about as a direct result of these alleged Fourth Amendment violations.

Second, Brown claims that the defendant officers' unconstitutional actions resulted from the City of Atlanta's "unlawful custom or policy of using the License and Permits Unit to conduct warrantless entries onto private property in order to conduct general criminal investigations that went far beyond the legal authority afforded to the unit to inspect compliance with the City's licensing ordinances." Amend. Compl. ¶ 20 [Doc. No. 7]. Brown has

alleged enough to continue with his claim against the City of Atlanta under municipal liability.  In most instances, a plaintiff must prove that a violation occurred more than once.  *City of Oklahoma City*, 471 at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  Brown has alleged that the city conducted other unlawful searches based on said custom or policy that same night.  Amend. Compl. ¶ 22 [Doc. No.7].  Therefore, Brown has properly alleged that the City of Atlanta had a custom or policy that constituted a deliberate indifference to Brown's Fourth Amendment rights.

Finally, Brown must show that the custom or policy caused the constitutional violation.  Brown alleged that the defendant police officers entered his private club and arrested him pursuant to the City of Atlanta's custom or policy of conducting criminal investigations under the veil of a random commercial property compliance check.  Brown asserts that the individual defendants would not have entered his clubhouse without a warrant if there had not been a city custom or policy in place that condoned this type of behavior.  Therefore, Brown has alleged that the custom or policy caused the constitutional violation.

When taking the facts alleged in the amended complaint as true and construing them in the light most favorable to the non-movant, Brown has sufficiently alleged that his constitutional rights were violated, that the City of Atlanta had a policy or custom that constituted a deliberate indifference to his constitutional rights, and that this policy or custom caused the violations at hand.  Based on these allegations, Brown has properly stated a claim for relief under Count I; therefore, the motion to dismiss this claim is DENIED as to municipal liability.

### B.  Claims Against the Individual Defendants

### 1.  Federal Claims – Qualified Immunity

"Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Randall v. Scott*, 610 F.3d 701, 714–15 (11th Cir. 2010).  To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  "Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate."  *Id.*

The United States Supreme Court has established a two-step analysis to determine whether qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts that a plaintiff has "alleged show that the officer's conduct violated a constitutional right." *Id.* Second, the court must decide "whether the right was clearly established." *Id.* "Clearly established law is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall*, 610 F.3d at 714–15. Such "fair notice" can be given in a variety of ways. *Id.* The district court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation." *Gonzalez*, 325 F.3d at 1233. "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Id.*

In this case, neither party disputes that the individual officers were acting within the scope of their discretionary authority at the time they

entered the private clubhouse and arrested Brown.  The burden thus shifts to

Brown to show that qualified immunity is not appropriate.  That is, the court

must decide whether the facts Brown has "alleged show the . . . [officers']

conduct violated a constitutional right" and "whether the right was clearly

established." *Saucier*, 533 U.S. at 200–01.

### a. Warrantless Search

Brown contends that the individual defendants violated his Fourth

Amendment rights by entering the private clubhouse without a warrant

when no exigent circumstances or other circumstances authorizing entry

existed.  The Fourth Amendment provides that the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated . . . ."  U.S. CONST. amend. IV.

"[E]xcept in certain carefully defined classes of cases, a search of private

property without proper consent is unreasonable unless it has been

authorized by a valid search warrant." *Camara v. Municipal Court of City*

*and County of San Francisco*, 387 U.S. 523, 528–29 (1967).  Brown claims

that his rental property is a private clubhouse.  The court will analyze the

alleged constitutional violation as if it occurred at a business property

because there is no indication that it is a residence (traditionally, a home has

had the greatest protection under the Fourth Amendment).  "The

businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *Marshall v. Barlows's Inc.*, 436 U.S. 307, 313 (1978). Additionally, "[t]he businessman . . . has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *Id.* Therefore, a warrantless entry into a business is presumptively unreasonable. *Id.* A warrantless entry into the clubhouse with consent would not violate the Fourth Amendment. Therefore, the existence of a valid consent to enter would bar Brown's claim related the warrantless entry.

In this case, the defendants argue that someone at the private club gave consent for the officers to enter the premises. Brown argues, and his amended complaint states, that "surveillance footage shows that the officers entered on their own, and no member opened the door for them." Amend. Compl. ¶ 38 [Doc. No. 7]. Because the court takes the facts alleged by the non-movant as true, the court will assume that no consent was given for this motion to dismiss.

The defendants argue that they are authorized to make a warrantless search because the Atlanta Municipal Code allows a warrantless search in

certain circumstances.  "[A]n exception from the search warrant requirement has been recognized for pervasively regulated businesses and for closely regulated industries long subject to close supervision and inspection." *Marshall*, 436 U.S. at 313.  "Liquor . . . and firearms . . . are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation."  *Id.*

Brown claims that he was not running a business or selling alcohol. Brown asserts that he was the president of a motorcycle club that rented out the property at issue as a private clubhouse.  The clubhouse was not open to the public, there was no business being conducted at the clubhouse, and the members were holding a private bachelor party.  Amend. Compl. ¶¶ 23, 27–28 [Doc. No. 7].  "No food or alcohol was being sold, though club members and guests could bring their own food and beverages to enjoy and share."  Amend. Compl. ¶ 29 [Doc. No. 7].  Based on the facts alleged by Brown, he was not conducting a liquor or firearms business.  In fact, Brown's allegations are that he was "not engaged in any regulated or licensed business."  *Id.* Therefore, this exception should not apply to this case even if the Atlanta Municipal Code allows warrantless searches of private clubs or businesses selling alcohol.

Even if this motorcycle club is an establishment that the police could enter for a compliance check without a valid warrant, the statutes the defendants cite are not applicable to this case.  First, the defendants rely on City of Atlanta Ordinance § 10-1 to argue that the Atlanta Police Department may inspect the list of club members during all hours the private club is open on the club property.  The defendants rely on this ordinance for the proposition that the police may enter the business at any time and for any reason.  Brown has asserted that there was an ongoing private party at 4:30 a.m. when the police arrived and that the club was not open for business. Furthermore, there is no indication that the police came to inspect the member list, but instead entered the premises for an unrelated reason. Therefore, taking the facts alleged by Brown as true, City of Atlanta Ordinance § 10-1 did not establish a right for the Atlanta Police to enter Brown's private club at 4:30 a.m. without a warrant for a compliance check. Second, the defendants rely on City of Atlanta Ordinance § 10-3 to show that Brown and his club committed a violation by unlawfully providing alcohol without a license to patrons at the clubhouse.  However, Brown's amended complaint states that the members brought and consumed their own alcohol and none was provided by the club.  Therefore, City of Atlanta Ordinance § 10-3 is also not applicable to this case.  Finally, even if allowed by the

12

statutes, the individual defendants went beyond the lawful scope and turned the search into a full-scale criminal investigation.  *See Bruce v. Beary*, 498 F.3d 1232, 1240 (11th Cir. 2007) (stating that "[t]he statute must limit the discretion of the inspecting officers and the inspection must have a properly defined scope.").  The individual defendants immediately detained guests attending the party, demanded identification and ran background checks, and performed a full-scale search of the property.  Amend. Compl. ¶¶ 43–44, 54 [Doc. No. 7].[3]

The allegations by Brown, if proven true, demonstrate that the defendants violated the Fourth Amendment by entering the private clubhouse without a warrant or consent.  The exceptions asserted by the defendants are not applicable to this case.  The analysis now turns to whether Brown's Fourth Amendment right was clearly established.

A plaintiff's right to not have the police enter private property without a warrant and without an exception to the warrant requirement is clearly established.  "The law clearly establishing the violation also must be 'pre-existing'—that is, in effect at the time of the alleged violation.  This requirement ensures that officers will not be liable for damages unless they

---

[3] The defendants claim to have smelled marijuana, but Brown's complaint alleges that there was no marijuana being used.  Amend. Compl. ¶ 55 [Doc. No. 7].

had 'fair warning' that their conduct violated the law." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).  The United States Supreme Court has previously held that a warrantless entry without an exception to a business is a Fourth Amendment violation.  *Marshall*, 436 U.S. at 312.  Accordingly, the defendants have had fair warning of this rule for decades.

In sum, the facts alleged in the amended complaint are that the defendants entered the private clubhouse without a warrant and with no applicable exception to the warrant requirement.  Therefore, the defendants are not entitled to qualified immunity for the unlawful search at this point in the proceedings.  "Even so, there are always two sides to a story, and should it become apparent that [the defendants did have a legal basis for entering the club], the [c]ourt will revisit the qualified immunity question at a later date."  *Galloway v. City of Abbeville, Ala.*, 871 F. Supp. 2d 1298, 1307–08 (M.D. Ala. 2012).

### b.  Seizure

As previously stated, Brown has the burden to show the court that the defendants are not entitled to qualified immunity.  The Fourth Amendment states that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by

Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."  U.S. CONST. amend. IV.  Based on the facts presented by Brown, he has alleged sufficient factual allegations for a Fourth Amendment seizure violation.

Additionally, Brown has shown that his Fourth Amendment right to be free from unlawful seizure is clearly established by citing the *Bruce* case. Because the inspection of the club's premises was unlawful from the start, "then nothing discovered in the ensuing search could have been used to support the required probable cause to arrest . . . [Brown] or seize" his property.  *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007).  Additionally, Brown cited to City of Atlanta Ordinance § 30-59.  That ordinance forbids compliance investigators from arresting individuals, but allows citations to be issued.  It is not clear at this stage in the proceedings if the nine individual defendants are compliance investigators as Brown contends and not allowed to make arrests while on a compliance check, or if the ordinance does not apply because the individual defendants are City of Atlanta police officers and not merely compliance investigators.  Nevertheless, Brown has pointed to clearly established law that prohibits the conduct alleged.  Therefore, the motion to dismiss Count I by the individual defendants is DENIED.

### c. First Amendment Violation

Brown asserts the violation of his right to peaceably assemble under the First Amendment to the United States Constitution against the individual defendants only.  As set forth above, "qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Pearson*, 555 U.S. at 232.  The Supreme Court does "not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).  Here, Brown cannot show that the law is clearly established for his First Amendment claim.  Brown does not direct the court to any cases that would have put these individual defendants on notice that they were violating Brown's constitutional right to peaceably assemble.

A plaintiff needs to show that there is case law binding in the circuit that clearly establishes a constitutional right.  *See Plumhoff v. Rickard*, 134 S.Ct. 2012, 2024 (2014) ("[R]espondent has not pointed us to any case—let alone a controlling case or a robust consensus of cases . . . that could be said to have clearly established the unconstitutionality of using lethal force to end a high-speed car chase.").  Brown has cited to First Amendment cases generally, but has not directed the court to any cases similar to the instant facts.  The law is not clearly established that there would be a First

Amendment violation simply because a police officer makes an arrest while a group of friends (or members of a club) are having a private party.[4]  Brown has not shown that the individual officers should have been on notice that they were violating clearly established law when Brown was arrested.  There are no cases with similar factual scenarios that would have put these individual defendants on notice that arresting Brown while he was attending a bachelor party was a violation of Brown's constitutional right.  Accordingly, qualified immunity bars Brown's claim under the First Amendment. Therefore, the motion to dismiss Count III is GRANTED as to the federal law claims.

### 2.  State Law Claims – Official Immunity

The individual defendants rely on official immunity in moving to dismiss the state law claims brought against them in their individual capacities based on official immunity.  In Georgia, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure." *Harvey v. Nichols*, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).  While the parties do not explicitly agree that the defendants' acts were discretionary, the

---

[4] In fact, it is not clear that this case presents a First Amendment violation at all.

plaintiff's response brief analyzes only the discretionary issue and his need to prove actual malice; therefore, the plaintiff has abandoned any argument that the defendants were acting in their ministerial capacities. The individual defendants entered the clubhouse without a warrant, searched the property, and arrested Brown. The question for purposes of official immunity is whether the defendants acted with malice. Georgia law provides, "actual malice requires deliberate intention to do wrong and denotes express malice or malice in fact." *Adams v. Hazelwood*, 520 S.E.2d 896 (Ga. 1999). Brown has alleged sufficient facts to bar the defendants' official immunity protection at this stage of the litigation. Although Brown merely alleges in conclusory statements that the defendants' actions were "willful, deliberate, and malicious" under Count II and Count IV, his factual allegations are sufficient to show that the defendants acted with deliberate intention to do wrong.

Under Count II, Brown states that "[t]he unlawful entry and search of Plaintiff's property, and his unlawful arrest . . . violated Plaintiff's rights under Article 1 § 1 ¶ 13 of the Georgia Constitution." Amend. Comp. ¶ 92 [Doc. No. 7]. Brown alleges that the defendants did not have a search warrant to enter the property, nor did the defendants have any exception to the warrant requirement. Amend. Compl. ¶¶ 35–36 [Doc. No. 7]. Nevertheless, the officers entered the premises. Additionally, the defendants

arrested Brown for violating City of Atlanta Ordinances § 30-55 and § 10-3. Brown claims that this arrest is a false arrest and battery under Georgia law because the arresting officers had no legal authority to arrest Brown.

Count IV is a claim against the individual defendants alleging intentional infliction of emotional distress.  Brown asserts that the defendants' "acts of misrepresenting evidence to authorities, arresting Plaintiff Brown without probable cause, harassment, and urging the prosecution of Plaintiff . . . were intentional and/or reckless."  Amend. Compl. ¶ 102 [Doc. No. 7].  Additionally, Brown claims the defendants' conduct "was extreme and outrageous" and "caused Plaintiff to suffer severe emotional distress."  Amend. Compl. ¶¶ 103–104 [Doc. No. 7].

Under Count III, Brown alleges that the individual defendants "violated Article 1 § 1 ¶ 9 of the Georgia Constitution, which guarantees free speech and freedom of assembly."  Amend. Compl. ¶ 101 [Doc. No. 7].  Brown has not alleged that the individual defendants acted with malice under this claim.  It is not even clear based on the amended complaint if the individual defendants infringed Brown's right to free speech and freedom of assembly. Even so, Brown has not alleged that the individual defendants deliberately tried to stop Brown from exercising his rights.  Therefore, official immunity

bars Brown's Article 1 § 1 ¶ 9 of the Georgia Constitution claim against the individual defendants.

The facts alleged by Brown raise an inference that the defendants acted with actual malice as to Counts II and IV, but not Count III.  Accordingly, the defendants' motion to dismiss the state law claims is DENIED in part and GRANTED in part.  The motion to dismiss Counts II and IV is DENIED, however the motion to dismiss the state law claims in Count III is GRANTED.

### 3.  Punitive Damages

Brown has requested punitive damages against the individual defendants.  Because certain claims for which punitive damages may be based have survived the motion to dismiss, the court will not dismiss the prayer for relief of punitive damages at this time.  Therefore, the defendants' motion to dismiss punitive damages is DENIED.

### IV.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss [Doc. No. 10] is GRANTED in part and DENIED in part.  The motion to dismiss Count I is DENIED.  The City of Atlanta also moved to have state law claims against it dismissed because of sovereign immunity.  Brown did not assert state law claims against the City of Atlanta; therefore, the motion to dismiss

state law claims against the City of Atlanta is DISMISSED as MOOT.  The

motion to dismiss the state law claims in Counts II and IV is DENIED.  The

motion to dismiss Count III is GRANTED as to the federal and state law

claims.  Finally, the defendants' motion to dismiss the claim for punitive

damages is DENIED.

> **SO ORDERED** this 18th day of August, 2016.

> /s/ Charles A. Pannell, Jr.
> CHARLES A. PANNELL, JR.
> United States District Judge