UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVON W. BROWN,

        Plaintiff,

    v.

CITY OF ATLANTA, *et al.*,

        Defendants.

CIVIL ACTION NO.

1:16-CV-008-CAP

## O R D E R

This is a civil rights action brought by the plaintiff Devon Brown against the City of Atlanta (the "City"), and the individual defendants Bryant Burns, Kelvin Walls, Alfred Watkins, Gary Smith, Richard Dillon, Robbie Scandrick, Gordon Cabanaw, Ritchie Newell, and Stanley Reynolds (the "Individual Defendants")[1] alleging an unlawful search and seizure and various related claims.   Before the court are the defendants' motion for summary judgment [Doc. No. 47], Brown's motion for partial summary judgment against the City [Doc. No. 54], and Brown's motion for sanctions against the City [Doc. No. 52].

---

[1] Each of the Individual Defendants was an employee of the City at the time of the alleged incident as an officer of the City's Police Department (Burns, Walls, Watkins, Smith, Dillon, and Scandrick), the City's Buildings Department (Cabanaw), or the City's Solicitor's Office (Newell and Reynolds).

As an initial matter, the court **GRANTS** the defendants' motion to file their motion for summary judgment in excess of twenty-five (25) pages [Doc. No. 47-2].   In addition, because Brown concedes that summary judgment against him is appropriate for Count IV of the amended complaint (intentional infliction of emotional distress), the defendants' motion [Doc. No. 47] is **GRANTED** as to Count IV.

Brown's remaining claims are for unlawful search and seizure under the Fourth Amendment to the United States Constitution against both the City and the Individual Defendants (Count I) and for false arrest and battery against the Individual Defendants under state law (Count II).[2]   He also seeks punitive damages against the Individual Defendants.   Brown asserts that the defendants violated his federal and state rights by entering his private clubhouse without a warrant under the guise of a city business and alcohol license compliance check and arresting him for violating the related city ordinances.

The defendants have moved for summary judgment, arguing: (1) that Brown cannot establish the elements for municipal liability; (2) that the Individual Defendants are entitled to qualified immunity (for the federal

---

[2] Brown also asserted that the defendants violated his right to assembly and free speech under the federal and state constitutions (Count III).  That claim was dismissed in the court's August 18, 2016 order [Doc. No. 13].

claim); (3) that the Individual Defendants are entitled to official immunity (for the state law claims); and (4) that punitive damages are unavailable. Brown has filed a cross-motion for summary judgment solely for his federal claim against the City.  He has also filed a motion for sanctions against the City, asserting that both Rule 30(b)(6) designees that the City offered were not adequately prepared for their depositions.

After reviewing the record and the parties' submissions, the court enters the following order.

## I.    Facts and Procedural Background

In the early hours of February 8, 2014, the Individual Defendants (six police officers and three compliance officers from other departments) gathered to conduct a compliance check at a business on Campbellton Road in southwest Atlanta.   Undercover officers had previously witnessed misconduct at the location, including alcohol sales to minors.  The officers also knew the business to be open past legal business hours.  The plan was to enter and inspect the business for compliance with Atlanta's Code of Ordinances (the "City Code") and issue appropriate citations.  They had both a search warrant and an arrest warrant to do so.

But they did not conduct that search.  The business was closed, which prevented their inspection—apparently regardless of the warrants.  All was

not lost.   Sergeant Walls recalled receiving information that other establishments in the nearby areas had been operating outside legal business hours and conducting other illegal activity.   Because they had the resources ready for their initial target, the officers decided to "attack" some of these areas.   Burns Dep. at 63:4–6 [Doc. No. 50].   They began checking the Metropolitan Parkway corridor, working their way up the road, and eventually came upon the unit that the plaintiff Devon Brown rented as a clubhouse for the Dirty South Slab Riders ("DSSR") motorcycle club.[3]

The DSSR had signs on the premises that read "no trespassing," "keep out," and "private club."   However, the officers believed that the location was a commercial property open for business.   When approaching the DSSR, they noted several cars in the parking lot, loud music playing, and tinted windows on the building.   They also saw a person leave from the front door and noted that the door was unlocked.   They then decided to enter without knocking.

The officers did not have a warrant to search the DSSR, nor to arrest anyone on the premises, including Brown.   They simply began conducting a compliance check of the DSSR based on their observations.   Once inside, they also saw that alcohol was available on the premises.   The parties

---

[3] While the DSSR is a motorcycle club rather than a physical location, for purposes of this order, the court will refer to both the club itself and the clubhouse unit as the DSSR.

dispute the length of the search and each others' conduct.  However, it is undisputed that Brown (either initially or after some time) presented himself to the officers as the president of the establishment.  When asked for the DSSR's business and alcohol licenses, Brown answered that he did not have either license and that he did not believe he needed them.  The officers thought otherwise, and arrested Brown for violating City Code Sections 30-55 (failure to obtain a business license) and 10-3 (failure to comply with liquor licensing provisions).

Brown was initially found guilty of violating City Code Sections 30-55 and 10-3 in Atlanta municipal court.  That ruling was overturned on appeal by the Fulton County Superior Court, and Brown was cleared of the charges.[4]  Specifically, the Superior Court held that the DSSR (1) is not a "business" subject to City Code Section 30-55; and (2) is not a "business" or a "bottle house" subject to City Code Section 10-3.   Brown then brought this action.

During discovery, Brown issued a notice of deposition to the City under Federal Rule of Civil Procedure 30(b)(6).  The notice instructed the

---

[4] In Georgia, a county's Superior Court has jurisdiction "to review and correct" the judgments of municipal courts and any other inferior Georgia courts.  O.C.G.A. § 15-6-8; *see also Smith v. Gwinnett County*, 542 S.E.2d 616, 617 (Ga. Ct. App. 2000).

City to designate a representative to testify on its behalf on two topics: (1) "[t]he City's legal justification for the entry and search of Plaintiff's property, and the arrest of Plaintiff, on February 8, 2014"; and (2) "[t]he policies and procedures of the City pursuant to which the entry and search of plaintiff's property was carried out, and pursuant to which Plaintiff was arrested" [Doc. Nos. 36, 39, 41]. The City first presented Major Darin Schierbaum for deposition. His deposition was short lived. Brown's counsel believed that Schierbaum was not prepared to speak on the designated topics and requested a substitute 30(b)(6) designee. The City then provided Detective Edward Miles as its representative four weeks later. Brown's counsel again felt that the deponent was not prepared to testify on the noticed topics, but continued to depose Miles on the information that he knew.

Following the close of discovery, the parties filed the instant motions: (1) defendants' motion for summary judgment [Doc. No. 47]; (2) Brown's motion for partial summary judgment against the City [Doc. No. 54]; and (3) Brown's motion for sanctions against the City [Doc. No. 52].

## II. The Motions for Summary Judgment

### A. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that are disputed in good faith but are not

material to the case will not preclude summary judgment, *id.*, and "genuine" issues of material fact must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted). Conversely, when the evidence could reasonably result in a verdict for the nonmovant, a genuine dispute exists and summary judgment is improper. *Anderson*, 477 U.S. at 247.

Finally, this standard does not change when addressing cross-motions for summary judgment. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Rather, '[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'" *Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1387 (N.D. Ga. 2014) (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004)).

### B.    Discussion

#### 1.    Brown's Federal Claim Against the City

The defendants and Brown have both moved for summary judgment as to Brown's Section 1983 claim against the City [Doc. Nos. 47, 54].

8

Under Section 1983, any "person" who, under color of law, causes a United States citizen to be deprived of a constitutional right may be liable at law or in equity.  42 U.S.C. § 1983.  Municipalities are "persons" subject to liability under Section 1983.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  And while the Supreme Court has said municipalities do not receive qualified immunity from suit, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993), municipal liability under Section 1983 is strictly limited.  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  In *Monell*, the Supreme Court held that municipalities are not subject to Section 1983 liability on the theory of respondeant superior.  *Monell*, 436 U.S. at 690. That is, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom,[5] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

---

[5] Case law has defined these terms in the context of Section 1983 actions.  A "policy" is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).  A "custom" is an "unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law."  *Id.*

injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Thus, to impose Section 1983 liability on a municipality, a plaintiff must show that a municipal employee or agent committed a constitutional violation, and did so based on a municipal policy or custom.  "Random acts or isolated incidents" are usually insufficient to demonstrate a policy or custom; the plaintiff must instead show a "persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).  In addition, the plaintiff must show that the "policy or custom of the city 'subjected' him, or 'caused him to be subjected' to the deprivation of constitutional rights." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985).

The court will first address whether Brown has shown a constitutional violation.  Brown alleges that the City violated his rights under the Fourth Amendment, which provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.  "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant."  *Camara v. Mun. Court of City & Cty. of San*

*Francisco*, 387 U.S. 523, 528–29 (1967).   This rule applies to commercial premises as well as private homes, and to civil as well as criminal investigations.  *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978).  In the absence of a carefully defined exception, a warrantless entry into a private commercial property is presumptively unreasonable and violates the Fourth Amendment.  The question is whether the defendants' search falls within one of those exceptions such that their conduct was reasonable and not in violation of Brown's Fourth Amendment rights.

The City does not dispute that the officers entered the DSSR without a warrant or consent.  Rather, it argues that the officers had a right to be there under the City Code.  Specifically, the City asserts that its warrantless entry into DSSR was a lawful administrative inspection to check for compliance with the City's business and alcohol license provisions.

An administrative inspection may qualify as an exception to the Fourth Amendment's general rule against warrantless entry.  *Bruce v. Beary*, 498 F.3d 1232, 1239 (11th Cir. 2007).  "[A]dministrative inspections do not offend the Fourth Amendment if they are necessary in order to monitor closely regulated businesses for the purpose of learning whether a particular business is conforming to the statute regulating that business."  *Id.*  But most businesses are not subject to this exception.  It only applies to

inspections of "pervasively regulated businesses and [ ] closely regulated industries long subject to close supervision and inspection." *Marshall*, 436 U.S. at 313 (internal citations and quotations omitted). "The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision," like in the liquor and firearms industries. *Id.*; *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2455 (2015) (noting that if "general regulations were sufficient to invoke the closely regulated industry exception, it would be hard to imagine a type of business that would not qualify"). Finally, administrative inspections must be properly limited both in scope and in the discretion of the officers. *Bruce*, 498 F.3d at 1240 ("[E]ven when permitted, the Constitution requires that administrative inspections be appropriately limited . . . [as to] the discretion of the inspecting officers and the inspection must have a properly defined scope." (internal citations and quotations omitted)). Otherwise, citizens would be subject to the "unbridled discretion [of] executive and administrative officers . . . as to when to search and whom to search." *Marshall*, 436 U.S. at 323.

The City argues that the officers' entry into the DSSR was a lawful administrative inspection under City Code Sections 10-32 (alcohol license inspections) and 30-76 (business license inspections). Brown counters that DSSR was not subject to either provision because it was neither a business

establishment nor an alcohol distributor, and thus, the administrative inspection exception cannot apply.  On the same basis, Brown argues that there is no genuine dispute that the search and seizure violated his rights.

City Code Section 10-32 authorizes Atlanta police officers "to inspect establishments licensed under [Chapter 10] during the hours in which the premises are open for business.  These inspections shall be made for the purpose of verifying compliance with this chapter."  City Code § 10-32.  The City argues that the DSSR was subject to this provision because it was a "private club" as defined in Section 10-1.  In support, the City points to Sergeant Burns' testimony that Brown referred to the DSSR as a "private club" during the inspection.  Even if true, Brown using of the term "private club" is not enough to make the DSSR Clubhouse subject to Chapter 10 compliance checks.  Chapter 10 defines the term "private club" as "a corporation chartered, organized and existing under the laws of the state" and continuously maintaining "not less than 250 members."  City Code § 10-1.  Brown argues that the DSSR was never formally incorporated in Georgia and does not have a formal charter.  And the evidence shows that, even at its height, the DSSR had no more than about twenty members.  So despite the City's contention, the express terms of the City Code show that the DSSR was not a "private club" subject to inspections under Section 10-32.

The City's argument that the inspection was authorized under Section 30-76 is similarly doomed.  That provision states that "[t]he certificate issued for any business location shall be available for inspection at the address listed on the certificate and shall be displayed to any authorized enforcement officer of the city when so requested.  This requirement may also be satisfied by posting the certificate in some conspicuous place at the address listed on the certificate."  City Code § 30-76.  The City offers no additional argument for why the DSSR fell under this ordinance beyond its "private club" assertion, which the court rejects.   Setting that aside, the City also acknowledges that administrative inspections must be limited to "closely regulated businesses" to avoid the warrant requirement.  Defs' Br. at 13 [Doc. No. 47].  Simply being a business in general is not enough.  *Marshall*, 436 U.S. at 313.  So even if the DSSR was subject to Chapter 30 as a "business," a compliance check for an ordinary business license cannot qualify for the exception to the warrant requirement.

In addition, the Superior Court of Fulton County has already determined that the DSSR was not subject to either of these provisions.  The Superior Court found "as a matter of law" that the DSSR was "not a 'Business' under Chapter 30 of the Atlanta City Code" and that it "was neither a 'Business' nor a 'Bottle House' and thus Atlanta City Code § 10-3

[(failure to comply with liquor licensing provisions)] does not apply" [Doc. No. 60-5 at 4]. The state court's findings also preclude any ruling to the contrary due to collateral estoppel.[6]

The City offers no adequate basis for a rational trier of fact to find that the DSSR was otherwise subject to Sections 10-32 or 30-76 of the City Code. Accordingly, the court finds that the compliance check was not an administrative inspection that qualifies for an exception to the warrant requirement.

The City also asserts that the officers were operating in good faith when entering the DSSR.[7] But the Supreme Court has held that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980). Allowing the City to evade liability based on the qualified

---

[6] In Georgia, "collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies . . . [when] those issues . . . actually were litigated and decided in the previous action, or . . . necessarily had to be decided in order for the previous judgment to have been rendered." *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262–63 (2006). The state court action was between the City and Brown, and whether the DSSR fell within those definitions was fully litigated and decided. While the City is correct that the state court did not determine if the DSSR was a "private club" under City Code Chapter 10, this court finds that it was not.

[7] The City did not assert this argument in its own motion, but in response to Brown's motion for partial summary judgment against the City.

immunity of its officers would "contraven[e] the Supreme Court's holding in *Owen*." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). While the City also argues that the officers' arguable probable cause relieves it of liability, that argument similarly lacks merits because the purpose of showing arguable probable cause is to receive qualified immunity. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Further, the court finds that arguable probable cause is not available to the Individual Defendants. Probable cause to enter without a warrant requires exigent circumstances. *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004) ("Absent exigent circumstances, police must have a search warrant to enter any area in a place of business that is off-limits to the general public."). Brown has adequately shown that there were no such exigent circumstances here. And while arguable probable cause may afford qualified immunity for a warrantless arrest, *Brown*, 608 F.3d at 735, nothing uncovered during an unlawful inspection can be used to support arguable probable cause. *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007). So, because the officers' entry into the DSSR was unlawful from the start, there can be no supporting probable cause to arrest from the ensuing search. *Id.*

Accordingly, the court finds that the warrantless search and seizure does not qualify for the administrative inspection exception, and the

16

defendants point to no other applicable exception to the warrant requirement. Brown has successfully proven that his Fourth Amendment rights were violated.

The court must now determine if Brown has established that the City had a custom or policy that deprived him of his constitutional rights. He alleges that the City had a custom or policy permitting its officers to conduct a warrantless search of any commercial property for a business or alcohol license compliance check. The City responds that Brown has failed to show that the inspection was not an isolated incident.[8]

As noted above, a "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d

---

[8] The City offers two other arguments which the court will address here. First, in their affirmative summary judgment motion, the defendants argue that Brown cannot establish a custom or policy because he fails to show that the officers acted with deliberate indifference. They cite *Franklin v. Tatum*, 627 F. App'x 761 (11th Cir. 2015)—and no other cases—in support. Yet deliberate indifference is not required here. Indeed, *Franklin* addressed a claim for supervisory liability against a county sheriff—not a municipality. *Id.* at 764–66. Accordingly, this argument fails. Second, the City argues that Brown has not proven that the constitutional violation was caused by the acts of a final policymaker. But "not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). In fact, there are several ways to prove a policy or custom. *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 941 (11th Cir. 2017). Thus, this argument also fails.

1306, 1311 (11th Cir. 2011).  But that is not all that Brown has presented. In addition to showing that the officers entered the DSSR and arrested Brown without a warrant, Brown puts up the testimony of Sergeant Bryant Burns and Detective Edward Miles.

Burns is a defendant in this case.  He was at the inspection and arrested Brown.  During his deposition, Burns said that regardless of City Code Section 10-32, he "can still walk into any business, whether this is a licensed establishment or not, to find out, to check for compliance."  Burns Dep. 17:14–17 [Doc. No. 50].  He said that it was part of his general law enforcement authority to do so, and that this authority was based in City policy:

> Q. (By [Brown's attorney]) So I'll read into the record. You state here: Additionally, if the door was closed and unlocked, this is a commercial building zoned C1 commercial, which gives the City of Atlanta the authority to come in to check if the building was in compliance and all necessary licenses were presented.  Is that a fair statement of what you believe the basis of your authority was to enter into the premises without a warrant?
>
> A. Yes.
>
> Q. Okay. And is it City policy that any building that is zoned C1 commercial can be entered into without a warrant to check for licensure?
>
> A. Regardless how it's zoned, the police department or the business license department can enter into any business during the hours that it is open and the door is unlooked.

18

*Id.* at 18:19–19:11.   Burns also indicated that entering an establishment

without a warrant was a common practice:

> We often find that a lot, more often than not, we'll sometimes
> devote our time to just checking business licenses.  So there may
> be a building that has multiple suites in it, so we'll go from suite
> to suite, checking on that business license.  As long as they're
> doing business, we can enter into that business -- and the doors
> are unlocked.

*Id.* at 19:18–25.  The court notes that this practice was for general business

license inspections, not solely for inspections of closely regulated businesses

that might otherwise qualify for an exception to the warrant requirement.

Burns' testimony tends to show that the City had a policy or custom of

conducting unlawful, warrantless searches of commercial properties.

Miles, the City's 30(b)(6) designee, provides even more evidence in

Brown's favor.  Miles is not a defendant and was not involved in the events

that led to this lawsuit.  In fact, during his deposition, he revealed that he

apparently had no factual knowledge of the inspection of the DSSR—an

aspect that the court will separately address as to Brown's motion for

sanctions.  Yet Miles repeatedly stated that he was prepared to testify on the

City's policies and procedures, and the City's attorney also stressed that

Miles was prepared to testify on that topic throughout the deposition.  *See,*

*e.g.*, Miles Dep. at 7:9–11, 10:17–22 [Doc. No. 49].   In doing so, Miles

essentially confirmed that the City had a policy or custom for officers to enter private property without a warrant to check compliance with its business and liquor license provisions.  For instance, Miles confirmed that policy when asked about a written statement by Burns:

> Q. Okay.  And Sergeant Burns writes: Additionally, if the door was closed and unlocked, this is a commercial building, zoned C1 commercial, which gives the City of Atlanta the authority to come in and check if the building was in compliance and all necessary licenses were presented.  That statement that because the premises was zoned C1 commercial, that that fact permits the officers to come in without a warrant and do a compliance check, is that an accurate statement of City policy?
>
> A. Yes, that is accurate.
>
> Q. So under City policy, any building that is zoned C1 commercial, officers can do a warrantless entry to check for licensure?
>
> A. Right.  An inspection, yes.

*Id.* at 19:9–24.

Miles also said that the City did not limit an officer's discretion in determining whether a location was subject to inspection:

> Q. So as far as City policy goes, there's nothing that could limit sort of what basis an officer could cite as his basis for believing that an establishment may be licensed under this [Chapter 10]; is that right?
>
> A. Right.
>
> Q. Okay.  And any time an officer states that they believe an establishment should be licensed under [Chapter 10], is it City

policy that that person can enter the premises without a warrant?

A. Yes, that's correct.

Q. Okay.  And that's official City policy?

A. Yes. What happens during the course of inspection, [an] officer is allowed to enter the premises, and once he enters the premises, then he may develop other probable cause, which will lead him to go further into the investigation.

*Id.* at 15:3–19.  Miles would again indicate that City policy allowed officers to enter without a warrant for a general business license inspection, and then develop probable cause after the fact:

It's just an inspection.  So the warrant and the warrantless entries and stuff like that, it won't apply to just doing an inspection.  It's once we get inside, determine whether there's other crimes or violations being committed, that's when we'll determine whether or not we have probable cause to move forward with the investigation.

*Id.* at 21:6–12.  The City does not dispute that Miles spoke on its behalf when making these statements.  Nor does it not offer any evidence to contradict his testimony.  At most, the City argues that Brown mischaracterizes the testimony.  Having reviewed the transcript, the court finds otherwise.

In sum, the evidence weighs in Brown's favor.  Burns' testimony shows one instance of officers entering a building without a warrant under the alleged policy and further shows that this type of entry was a common

21

practice for the City police.  And Miles, someone completely unrelated to the inspection and authorized to speak on the City's behalf, confirmed that the City had a policy in line with Brown's allegations.  Thus, the court finds that Brown has established a custom or policy.

The final piece is whether this custom or policy caused Brown's rights to be deprived.  The court finds that it did.  Burns stated that this policy was the basis of his authority to enter the DSSR.  Burns Dep. at 19:1–4 [Doc. No. 50].

Accordingly, the defendants' motion for summary judgment as to Count I against the City is **DENIED**.  Brown's cross-motion for summary judgment is **GRANTED** such that the City is liable for violating Brown's Fourth Amendment rights.  The amount of damages will be determined by a jury at trial.

### 2.   Brown's Federal Claim Against the Individual Defendants

The Individual Defendants also move for summary judgment on Brown's Section 1983 claim based on qualified immunity.  Qualified immunity is an affirmative defense that protects government actors from being sued in their individual capacities for their discretionary acts.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  To receive qualified immunity, the government actor must prove that he was acting within his discretionary

22

authority.  *Cottone v. Jenne, II*, 326 F.3d 1352, 1357 (11th Cir. 2003).  If so, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  *Id.*  Here, there is no dispute that the Individual Defendants were acting within their discretionary authority.  Brown explicitly conceded this element in his response to the defendants' summary judgment motion [Doc. No. 60 at 19 n.2].  Accordingly, Brown must show that qualified immunity is not available to the Individual Defendants.

Whether an official is entitled to qualified immunity for his discretionary acts involves a two step inquiry.  First, the court must determine if the plaintiff's allegations "show that the officer's conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court must determine if that right was clearly established.  *Id.*

The court finds that Brown has sufficiently shown a constitutional violation.  As shown above, Brown has shown that the search and seizure violated his constitutional rights under the Fourth Amendment.  Thus, the court now considers whether those rights were clearly established.

A constitutional right is clearly established when public officials have been sufficiently provided "with 'fair notice' that the conduct alleged is prohibited."  *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  This may occur in one of three ways.

*Id.*; *see also Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). First, the broader principles from case law "can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002). "[I]f some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle." *Id.* Second, "a materially similar case that has already been decided" can create clearly established law. *Loftus*, 690 F.3d at 1204. And third, when "the conduct involved in the case may so obviously violate [ ] th[e] constitution that prior case law is unnecessary." *Id.* (alterations in original).

The constitutional right to be free from a warrantless entry into private property (residential or otherwise) without an exception to the warrant requirement is clearly established. *Marshall*, 436 U.S. at 312–13. The Supreme Court in *Marshall* held that "unless some recognized exception to the warrant requirement applies, [government entry onto private commercial property] would require a warrant." *Id.* at 313. The court also notes that this principle has been generally recognized since at least a decade before *Marshall* was decided. *Id.* at 312 ("This Court has already

held that warrantless searches are generally unreasonable, and that this rule applies to commercial premises as well as homes." (citing *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528–29 (1967); *See v. City of Seattle*, 387 U.S. 541, 543 (1967))).

The constitutional right to be free from unlawful seizure is also clearly established.  The Eleventh Circuit in *Bruce* held that nothing uncovered during an unlawful warrantless entry can be used to create the arguable probable cause required to conduct a warrantless arrest: "If the inspection of [the plaintiff's] Premises was unlawful from its inception or in its execution, then nothing discovered in the ensuing search could have been used to support the required probable cause to arrest [the plaintiff] or [to] seize . . . his property." *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007).

Brown has cited to both *Marshall* and *Bruce* in opposing summary judgment.  Accordingly, because Brown has pointed to clearly established law that prohibits the alleged conduct, the Individual Defendants are not entitled to qualified immunity, and their motion for summary judgment must be **DENIED**.

3.     Brown's State Law Claims Against the Individual Defendants

The defendants have also moved for summary judgment for Brown's remaining state law claims of false arrest and battery against the Individual Defendants (Count II)[9] based on the doctrine of official immunity.

Georgia's official immunity doctrine "offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).   The doctrine applies differently depending on whether the officer was engaged in a ministerial or discretionary act.   *Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1398–99 (N.D. Ga. 2014) (noting differing standards of liability between an official's ministerial and discretionary acts).   Because there is no dispute that the Individual

---

[9] The court notes that Count II of the amended complaint begins by alleging that the Individual Defendants violated Brown's rights under the Georgia constitution by unlawfully searching and entering the DSSR.   To the extent Brown is asserting a cause of action against the Individual Defendants under the Georgia constitution, that claim is not viable and cannot proceed. *See, e.g.*, *Davis v. Standifer*, 621 S.E.2d 852, 855 n.2 (Ga. Ct. App. 2005) (noting that Georgia law has no equivalent to Section 1983 to enable claims for individual liability against a state officer for unconstitutional acts).   Any contention by Brown that the reference to unlawful entry under the Georgia constitution impliedly alleges trespass—a contention that Brown has not made—is insufficient to state a claim for that cause of action.   Thus, Brown's only state law claims are false arrest and battery.

Defendants' acts were discretionary,[10] the court need only address official immunity as applied to discretionary acts.

Georgia's constitution provides officers with official immunity for discretionary acts unless "they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d); *see also* O.C.G.A. § 36–33–4 ("Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."). "Actual malice is a demanding standard: it requires an officer to act with a deliberate intention to do a wrongful act." *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (internal citations and quotations omitted). Intent to injure is a similarly demanding standard: it requires an officer to act with "intent to cause the harm suffered by the plaintiff." *Tisdale*, 51 F. Supp. 3d at 1399. "Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion [to make an arrest] even when the decision to effectuate the arrest is flawed." *Reed v. DeKalb Cty.*, 589 S.E.2d 584, 588 (Ga. Ct. App. 2003).

---

[10] As noted above, Brown has "concede[d] that the officers were acting within their discretionary authority" [Doc. No. 60 at 19 n.2].

The court finds that Brown has not met his burden here.  Rather than providing evidence of actual malice, Brown relies on *Lagroon v. Lawson*, 759 S.E.2d 878, 886 (Ga. Ct. App. 2014), asserting that the officers' malice can be inferred from the "total lack of probable cause" for the arrest.  *Lagroon* addressed malice in the context of malicious prosecution and not false arrest.[11]   In that case, there was evidence that the officers coerced the witnesses into giving false statements against the plaintiffs, going so far as to dictate the witnesses' statements.  *Id.* at 883.   In other words, the plaintiffs evidenced a "want of probable cause" by showing the officers' willful fabrication of the charges.  *Id.* at 886.   Brown points to no such evidence here.   Rather, "the evidence demands the conclusion that [the Individual Defendants] acted without actual malice.   There is no evidence that [they were] motivated by a personal animus toward [Brown]. Nor [are they] accused of manufacturing evidence or knowingly presenting perjured testimony."  *Mercado v. Swoope*, 798 S.E.2d 291, 294 (Ga. Ct. App. 2017).[12]

---

[11] While there was a claim for false arrest in *Lagroon*, the court granted summary judgment for the defendants on that count after finding malicious prosecution to be the proper claim.  *Lagroon*, 759 S.E.2d at 884.

[12] Brown also argues that because the officers entered the DSSR "without authority of law," they are not entitled to official immunity.  Yet Brown has conceded that "the officers were acting within their discretionary authority" [Doc. No. 60 at 19 n.2].  Thus, whether they were ultimately incorrect in arresting Brown does negate official immunity without showing actual

Because Brown has failed to provide any evidence of actual malice, the Individual Defendants are entitled to official immunity, and the defendants' motion for summary judgment is **GRANTED** as to Count II (false arrest and battery).

### 4.   Brown's Request for Punitive Damages

The defendants also seek summary judgment as to Brown's request for punitive damages. First, the defendants argue that punitive damages against a municipality are not available for Section 1983 claims. While that is true, Brown only seeks punitive damages from the Individual Defendants. In fact, the amended complaint expressly acknowledges that punitive damages are unavailable against the City. Am. Compl. [Doc. No. 7 at 21] (seeking punitive damages against the Individual Defendants "and not [against] the City of Atlanta, unless a change in law permits such damages"). The defendants' motion for summary judgment as to the City on this issue is therefore **DISMISSED** as moot.

---

malice or intent to injure. *Reed*, 589 S.E.2d at 588; *Reese v. City of Atlanta*, 583 S.E.2d 584, 585 (Ga. Ct. App. 2003) (finding official immunity applied and noting that "[e]ven if . . . the officer's investigation and decision to arrest were flawed, the officer's decisions remained discretionary"). Unlawful entry could otherwise be relevant for the tort of trespass, but Brown has not alleged that claim.

Next, the Individual Defendants argue that there is no evidence that they acted with fraud, ill will, recklessness, oppressiveness, willful disregard of Brown's rights, or otherwise in a manner aggravating the alleged injuries. Brown responds that the evidence of the defendants' unlawful, warrantless entry into his property and their arrest of Brown without probable cause or exigent circumstances sufficiently show willful disregard such that a jury may award punitive damages.

A plaintiff may recover punitive damages "under § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others.'" *Wright v. Sheppard*, 919 F.2d 665, 670 (11th Cir. 1990) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Viewed in the light most favorable to Brown, there is sufficient evidence in the record for a reasonable jury to conclude that Individual Defendants' actions exhibited callous or reckless indifference to Brown's federal rights.  Therefore, the court **DENIES** the defendants' motion for summary judgment as to punitive damages for Count I against the Individual Defendants.[13]

---

[13] Because the court grants the Defendants' motion for summary judgment on Brown's state law claims, the court need only address punitive damages for Brown's remaining federal claims.

## III.   Brown's Motion for Sanctions

Brown has moved for sanctions against the City under Federal Rule of Civil Procedure 37(d) for failing to provide an adequately prepared Rule 30(b)(6) designee.  Under Rule 30(b)(6), a partying noticing the deposition of a government entity or other organization "must describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  If this burden is met, the entity must then designate one or more persons to testify on its behalf "about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  This means that the "designee must be thoroughly prepared to give 'complete, knowledgeable and binding answers on behalf of the [entity].'"  *Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988, at *4 (N.D. Ga. June 4, 2013) (quoting *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)).  The designee's personal, independent knowledge of the deposition topics does not matter.  Rather, it falls on the entity to prepare the designee to provide binding answers on its behalf.  *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).

Rule 37(d) permits courts to order sanctions when the entity fails to do so.  It states that a court may order sanctions if a party's 30(b)(6) designee "fails, after being served with proper notice, to appear for that person's

deposition." Fed. R. Civ. P. 37(d).  Beyond the obvious "no show" scenario, a 30(b)(6) designee "fails to appear" when he is not prepared to testify on the noticed topics.  *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (holding that the presence of an unprepared 30(b)(6) designee constitutes "no appearance at all"); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("[P]roducing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d) of the Federal Rules of Civil Procedure."); *Wastecare Corp. v. Shredderhotline.com Co.*, No. 2:11-CV-297-WCO, 2014 WL 12538196, at *4 (N.D. Ga. Oct. 16, 2014) ("A 30(b)(6) corporate designee's lack of preparation for a deposition is deemed to be a 'failure to appear' for purposes of Rule 37(d).").  Potential sanctions include the award of reasonable attorney's fees and expenses caused by the failure.  Fed. R. Civ. P. 37(d)(3). The court may also prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)— (vi)."); *see also Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-CV-2510-WSD, 2015 WL 2091714, at

*9 (N.D. Ga. May 5, 2015) (prohibiting party from presenting further evidence on topics which its 30(b)(6) designee was not prepared to testify on).

Accordingly, the court must first determine whether Brown described the noticed topics with reasonable particularity. Next, the court must assess whether the City failed to prepare its 30(b)(6) designee on those topics and, if so, whether that failure justifies sanctions under Rule 37(d).

First, the court finds that Brown described the topics with reasonable particularity. Brown's 30(b)(6) notices[14] provided two deposition topics:

1. The City's legal justification for the entry and search of Plaintiff's property, and the arrest of Plaintiff, on February 8, 2014.

2. The policies and procedures of the City pursuant to which the entry and search of plaintiff's property was carried out, and pursuant to which Plaintiff was arrested.

[Doc. Nos. 36, 39, 41]. These topics are straightforward and specific, meeting the requirements of Rule 30(b)(6). *See Strategic Solutions*, 2015 WL 2091714, at *6–7 (finding that topics such as "[t]he services provided by Strategic Solutions" and "Defendant's use of the Investment Proposal and/or any parts of the Investment Proposal between January 2011 and present"

---

[14] Brown ultimately provided three separate notices: one for the initial deposition, a second for the substitute designee, and a third updating the date of the deposition. The topics were identical in each notice.

satisfy Rule 30(b)(6)).  Thus, the court will now assess whether the City met its duty to prepare the 30(b)(6) designee on the noticed topics.

The City offered Major Darin Schierbaum as its 30(b)(6) designee on May 3, 2017.  Schierbaum was not prepared.  He had not seen the deposition notice, and confirmed that he was not prepared to testify on either of the designated topics.  Schierbaum Dep. at 6:14–16, 15:1–16:22 [Doc. No. 48]. He also indicated that the City's attorney had only instructed him to review the training that the Individual Defendants received and nothing further. *Id.* at 15:1–16:2.  Brown's counsel ended the deposition and requested that the City provide a properly prepared designee as a substitute.

About four weeks later, the City provided Detective Edward Miles as its substitute 30(b)(6) designee.  Brown provided the same topics for that deposition, yet Miles was also unprepared to speak on the noticed topics.  He conducted "very minimal" preparation for the first deposition topic— essentially he reviewed the related City Code sections but not the incident itself—and he even admitted that he could not give any information about that topic.  Miles Dep. at 6:16–7:2, 7:16–20 [Doc. No. 49].  On the second topic, he had no factual knowledge of the DSSR inspection or Brown's arrest. *Id.* at 10:13–11:2.  Nor did he review materials to familiarize himself with the incident.  *Id.*  Miles could speak generally on the City's policies and

procedures. *Id.* And like Schierbaum, Miles said that no one directed him to prepare to testify about anything further. *Id.* at 11:7–9. The deposition continued, but only as to the information Miles was prepared to provide, not as to the topics actually designated by Brown.

The court finds that the City failed its obligations under Rule 30(b)(6). The City was required to provide someone who was prepared to testify for the City on the noticed topics. Neither Schierbaum nor Miles was prepared to do so, amounting to a failure to appear for a 30(b)(6) deposition. *Black Horse Lane Assoc., L.P.*, 228 F.3d at 304. And the City points to no justifiable reason for its failure. It does not assert, for instance, that the information that Brown sought was unavailable. Instead, the City argues that it was Brown who failed to meet his Rule 30(b)(6) obligations, primarily asserting that the noticed topics were unreasonably vague. As noted above, the court finds otherwise.

The City offers three more arguments which the court also rejects: (1) that Brown's motion is untimely under Local Rule 37.1; (2) that Brown did not make a good faith attempt to conduct a pre-filing conference with the City before filing the instant motion; and (3) that Burns—a fact witness and not a 30(b)(6) designee—provided sufficient testimony to satisfy the City's obligations. First, Local Rule 37.1 does not apply to Brown's motion. Local

Rule 37.1 sets a 14-day time limitation on motions to compel a disclosure or discovery under Rule 37(a); it sets no such limitation on the instant motion for sanctions brought under Rule 37(d).    Second, and in the same vein, the City's reference to Rule 37(a)(1)'s requirement for a pre-filing conference does not apply here.    That provision also governs motions to compel a disclosure or discovery, not motions for sanctions under Rule 37(d).  In fact, courts have held that no such pre-filing conference is required for a motion for sanctions under Rule 37(d).  *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 335 (D. Nev. 2016) ("[A] pre-filing conference is not required under Rule 37(d) in relation to a motion for sanctions arising out of a nonappearance at a deposition." (citing 8B Wright, Miller & Marcus, Federal Practice & Procedure, § 2291, at p. 638 (2010))). And third, the City's contention that Burns answered questions on the topics during his deposition is irrelevant.    He was deposed in his individual capacity, not as the City's 30(b)(6) designee.  The whole point of the 30(b)(6) deposition was to provide the City's position on the noticed topics, not the position of the other defendants in the case.  Because Burns' testimony does not speak for the City, it does nothing to satisfy the City's 30(b)(6) requirements.

36

Despite being given two chances, the City simply did not to provide a properly prepared 30(b)(6) designee.  That failure cannot be excused under these circumstances.  Accordingly, the court finds that sanctions under Rule 37(d) are appropriate and Brown's motion for sanctions [Doc. No. 52] is **GRANTED**.  Brown is **ORDERED** to file a petition within 21 days of this order for reasonable attorney's fees and expenses associated with the 30(b)(6) depositions on April 28, 2017 and May 31, 2017, and for those associated with Brown's motion for sanctions [Doc. No. 52].  The City shall have 21 days from the date the petition is filed to file a response.  Any such response by the City shall be limited to the reasonableness of the fees sought by Brown.

## IV.   Conclusion

Accordingly, the defendants' motion for summary judgment [Doc. No. 47] is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to Counts II and IV of the amended complaint.  It is **DENIED** as to Count I and as to Brown's request for punitive damages against the Individual Defendants.  Brown's motion for partial summary judgment against the City [Doc. No. 54] is **GRANTED** on the issue of liability.  Damages for Count I against the City will be determined by a jury at trial.  Finally, Brown's motion for sanctions against the City [Doc. No. 52] is **GRANTED**.  Brown is

**ORDERED** to file a petition within 21 days of this order for reasonable attorney's fees and expenses associated with the 30(b)(6) depositions on April 28, 2017 and May 31, 2017, and for those associated with Brown's motion for sanctions [Doc. No. 52]. The City shall have 21 days from the date the petition is filed to file a response. Any such response by the City shall be limited to the reasonableness of the fees sought by Brown.

The parties are **ORDERED** to submit their proposed consolidated pretrial order within 30 days of the date of this order.

**SO ORDERED** this  9th  day of January, 2018.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge